# AGREEMENT FOR PUBLIC WORKS
## for the City of Pascagoula, Mississippi

This AGREEMENT is made on this \_17\_ day of \_November\_ 2009, between the City of Pascagoula, MS, (hereinafter "City"), whose address for any formal notice is City Hall, 603 Watts Avenue, Pascagoula, MS with Utility Partners, LLC dba UP Group, LLC (hereinafter "Operator"), with corporate offices at 1238 East Railroad, Gulfport, MS 39501.

City and Operator agree:

## ARTICLE 1. GENERAL

1.1 All definitions of words or phrases used in this Agreement are contained in Appendix A.
1.2 All facilities, grounds, equipment and vehicles now owned by the City and acquired by City shall remain the property of the City.
1.3 This Agreement shall be governed by and interpreted in accordance with the laws of the State of Mississippi
1.4 This Agreement shall be binding upon the successors of each of the parties but neither party will assign this Agreement, or any portion hereof, without the prior written consent of the other party.
1.5 All notices shall be in writing and transmitted by certified mail or personal delivery to the addresses listed above.
1.6 This Agreement, including Appendices, is the entire Agreement of both parties and may only be modified by mutually agreed written amendments signed by both parties. Wherever used, the terms "City" and "Operator" shall include the respective officers, directors, elected or appointed officials and employees.
1.7 This Agreement constitutes a renewal and extension of the contract between the parties dated December 19, 2006.

## ARTICLE 2. SCOPE OF SERVICES: OPERATOR

As a general statement of responsibilities assigned under this contract the Operator shall:

Provide professional utility management, operations and maintenance services of the City's Public Utility and Public Works Operations, consisting of the following divisions: Water, Sewer, and Natural Gas, Street and Drainage, Street Sweeping, Beautification and Property Maintenance.

The Operator shall also be responsible for all equipment, vehicles and facilities being used to operate the City's Public Utility and Public Works operations, including the water treatment and distribution facilities, as well as the wastewater collection and conveyance systems. These shall also include the designated water pumps, water



Company 3

storage tanks, water distribution lines and sewage collection lines and pumping stations. Further, Operator agrees to perform new sewer taps, water meter maintenance and installation consistent with or better than current operations and capabilities.

Specifically the Operator shall perform the duties listed below:

2.1 Hire, train and employ a sufficient number of employees to staff and operate the Project to provide continuing efficient and timely service in the operation of the Public Works and Utilities on behalf of the City. Operator shall assume responsibility for the cost of employing the Project workforce to manage, operate and maintain the City's Public Works and Utilities facilities. Where applicable, Project staff will meet water and wastewater certification requirements of the State of Mississippi.

2.2 Upon execution of the Contract, the Project will be initiated with 59 employees currently classified as Project staff. Any reductions in staffing of the Project resulting in a reduction in total Project staff by Operator of over 6 employees as of the date of start up, shall constitute a change in the contract, requiring a renegotiation of the contract cost, with appropriate credit assigned to the City. City approval must be granted prior to any Project position being eliminated. Management positions such as Project Manager or Contract Administrator shall not be included in the Project staff count.

2.3 Within the design capacity and capability of the facilities, manage, operate and maintain the water production systems so that finished water discharged from the Project meets State and Federal requirements.

2.4 Provide assistance to the City's engineering staff or consultants in review of any proposed project impacting Public Works or Utility operations.

2.5 Develop Standard Operating Procedures (SOP's) for use by the Project staff.

2.6 Provide a computerized maintenance management system for the City which shall include the required software and training of the staff. The cost of this system shall be included in the Operator's contract price. This system shall be employed to document all maintenance activities for the Project. City and its representatives shall have the right to inspect these records at any time.

2.7 Perform work planning and scheduling for the staff utilizing an approved maintenance management system and document completion of those tasks including the preventive and corrective maintenance of the City's equipment on a timely basis. These reports shall be made available for inspection by the City at any time.

2.8 Develop an Emergency Response Plan for use by the Project staff in the event of a natural disaster.

2.9 Perform other contract utility system operations services as directed by the City. Such services must be pre-authorized by the City and the cost of those services will be negotiated between the City and the Operator prior to any work being performed.

2.10 Insure all water sampling is performed in compliance with State standards and laboratory testing presently required for operation of these facilities and

performed by the Mississippi State Board of Health is performed for filing of all water quality permit reports to the regulatory agencies. These reports will be submitted to the City for transmittal to the appropriate State and Federal agencies in a timely manner.

2.11 All current purchasing policies and procedures of the City will remain in place. In addition, Operator shall update the City monthly on the cost-to-date of repair parts versus the annual budget amount for "Utility System Maintenance and Repair" for both the Public Works and Utilities Departments.

2.12 If there is an emergency requiring Operator to purchase a repair part or incur an expense on behalf of the City, Operator will be responsible to document and immediately notify the City's representative of the occurrence. Any repair parts purchased on behalf of the City under an emergency condition will be reimbursed to the Operator upon presentation of a proper receipt or copy of an invoice. Reimbursement to the Operator will be on a monthly basis and will be a direct pass-thru of the expense, with no additional mark-up or administrative fee added by the Operator.

2.13 On a "best efforts" basis during any public works or utilities project rehabilitation, Operator shall comply with all State and Federal Permit requirements. This clause does not relieve the Operator from any negligent acts on the part of its staff.

2.14 Provide twenty-four (24) hour per day access to Project for the City. Visits may be made at any time by any of City's employees. Keys for Project shall be provided to the Operator by the City. Visitors to the Project must comply with Operator's operating and safety procedures.

2.15 Perform other professional services that are incidental to the Scope of Services as directed by the City. Such services must be pre-authorized by the City and additional compensation to the Operator will be negotiated on a case-by case basis.

2.16 Provide capital planning and assistance to the City, if desired, for short and long term needs for expansions or modifications to the existing utility system as a result of increased demand, normal replacement needs or regulatory requirements imposed by the State or Federal agencies. Recommendations shall be submitted annually to the City during the term of this Agreement.

2.17 On a continuing basis provide professional management assistance to reduce the cost of power and chemicals for the City throughout the term of this Agreement.

2.18 Provide a drainage plan encompassing the frequency for inspection and maintenance of ditches, culverts, gutters and catch basins. This plan shall be reviewed and approved by the City. Progress updates shall be included in the monthly report in addition to inspections and maintenance reports submitted to the Operations Manager on an approved form on a weekly basis. Exceptions to the drainage plan must be approved by the Operations Manager.

2.19 Provide street sweeping services for the City with approved equipment either leased or owned by the Operator. Operator will be solely responsible for all costs of operating and maintaining the equipment including but not limited to fuel, parts, oil, hydraulics, pumps and training. A street sweeping maintenance program shall be submitted to the City within forty five (45) days of contract

R-123

acceptance and shall be approved by the City. Progress updates of the sweeping programs shall be included in the monthly report. Should the approved equipment become inoperable, adequate substitute equipment shall be utilized in order to maintain the sweeping schedule. Exceptions to the street sweeping plan shall be immediately reported to and approved by the Operations Manager.

2.20 In an effort to establish certain benchmarks of minimum acceptable performance, a baseline of work to be performed by the Operator has been developed from historical records available within the Public Works and Public Utilities Departments. These data are presented in Appendix D and represent the minimum work to be performed annually by the Operator.

2.21 Provide to the City written reports of work orders completed. All work orders are to be completed in a timely manner.

2.22 Project management staff shall be approved by the City prior to being assigned to the Project.

## ARTICLE 3. SCOPE OF SERVICE: CITY

Under terms of this Agreement the City shall do the following:

3.1 Maintain all existing Project easements, warranties and licenses that have been granted to City.

3.2 Pay all franchise, contract taxes, property or other normal taxes associated with the Project and levied by the Mississippi State Tax Commission.

3.3 Provide for Operator's use any vehicles and equipment presently in use at the Project. City shall continue to provide fuel and maintenance repairs of the vehicles and equipment, consistent with current practice. Future replacement responsibilities for any vehicles and equipment may be assumed by the Operator, if requested by the City. Such assignment of responsibility for vehicle and equipment replacement will require the City and Operator to negotiate a fair adjustment to the contract price for services under this Agreement. This adjustment of the contract shall also include a "buy-back" clause for purchase of Operator owned vehicles and equipment, if the City so chooses.

3.4 Provide auto tags for vehicles and equipment owned by the City.

3.5 Continue to pay for all utilities, chemicals, limestone, asphalt, gravel, cement, water meters, gas meters and all repair parts required for proper operation of the Public Works and Utility Departments, consistent with current practice and City budgeting procedures.

3.6 Continue to provide and pay for all required capital expenditures. These costs shall include all repairs, rehabilitation, expansions or modifications to the existing utility system as a result of increased demand, normal replacement needs or regulatory requirements imposed by State or Federal agencies.

3.7 Continue to pay the cost of any State or Federal fees associated with permits for the water or wastewater facilities as well as provide required funding for any Federal or State mandated program implementation over the term of this Agreement.

3.8 Continue to pay for all costs associated with wastewater transportation and treatment by the Jackson County Utility Authority.

3.9 Departmental priorities shall be set by City Manager, Operations Manager, or designee. Priorities are subject to change at the direction of the City and changes should be expeditiously addressed to the satisfaction of the City.

## ARTICLE 4. COST OF WORK

4.1 City shall pay to Operator as compensation for management services performed under this Agreement from December 1, 2009 – November 30, 2012; Operator's cost categories as outlined in Appendix C.

Subsequent year's fees will be increased 3% per year to cover cost of living adjustment:

| Term Year | Effective Date | Contract Fee |
|---|---|---|
| Year One | 12-01-09 to 11-30-10 | $3,365,246 |
| Year Two | 12-01-10 to 11-30-11 | $3,466,203 |
| Year Three | 12-01-11 to 11-30-12 | $3,570,189 |

4.2 Extensions beyond year three shall be limited to an annual increase for cost of living adjustment of 3% per year, unless otherwise negotiated between the City and Operator.

4.3 Repair parts may be purchased on behalf of the City by the Operator. Parts costing in excess of $500.00 must receive City's prior, written approval and shall be procured consistent with State of Mississippi bid laws. Cost for all parts shall be billed as a "pass-through" expense with no additional "Operator mark-up". Reimbursement for repair parts shall be in addition to the cost of management services as presented in Section 4.1 of this Agreement.

4.4 In the event that a change in the scope of services occurs or if there is an increase or decrease in the labor force required by the Operator, the City and Operator will negotiate a commensurate adjustment in the annual fee.

## ARTICLE 5. PAYMENT OF COMPENSATION

5.1 One-twelfth (1/12) of the base fee for the current year shall be due and payable by the fifteenth day of the month after each month that services are provided.

5.2 All other compensation, including any pass-thru expenses, billed by Operator is due upon receipt of the invoice and is payable within forty five (45) days.

5

R-125

## ARTICLE 6. CHANGE IN THE WORK

6.1 The City may make changes in the work, provided the changes are reasonably within the scope of this Agreement, and Operator shall expeditiously perform the changes as directed.

6.2 Public Works/Utilities and water and wastewater treatment facility system modifications and expansions which result in a recognized need and City approved increase in staffing constitute a change in the work. A commensurate adjustment in the contract will be negotiated in good faith between the City and Operator to cover these expenses.

## ARTICLE 7. ACCOUNTING RECORDS

7.1 Operator shall keep full and detailed records and books of account on the basis of generally accepted accounting practices in effect as of the effective date of this Agreement showing the actual direct cost to the Operator, under the provisions of this Agreement.

7.2 The City shall also be afforded access to all the Operator's other records, books, correspondence, instructions, memoranda and similar data relating to this Agreement and any of the work.

7.3 Operator shall preserve financial documents and other records to which City has access rights without additional compensation for a period of three years, or such longer period as required by law, after final payment.

## ARTICLE 8. INDEMNITY, LIABILITY AND INSURANCE

8.1 Operator shall hold City harmless from any liability or damages including compensatory and punitive damages, which may arise from Operator's negligence, carelessness of the Operator's staff or the Operator's failure to perform responsibly under the terms of this Agreement.

8.2 To the extent allowed by law, City shall hold Operator harmless from any liability or damages including compensatory and punitive damages which may arise from City's negligence, carelessness of the City's staff or the City's failure to perform responsibly under the terms of this agreement.

8.3 Operator's liability to City under this Agreement excludes all indirect or compensatory and punitive damages arising from the normal operation, maintenance and management of the Project other than the compensatory and punitive damages arising from the Operator's negligence, carelessness of the Operator's staff or the Operator's failure to perform responsibly under the terms of this Agreement.

8.4 Operator shall obtain insurance coverage of a type and in the amounts described in Appendix B. Nothing herein shall be construed as any waiver of immunity available to the City by Mississippi or Federal law.

8.5 Operator is responsible to the City for fines incurred as a result of negligent operations, carelessness and a failure to perform responsibly under the terms of this Agreement on the part of Operator or the Operator's staff which may be levied by local, state or a national entity.

## ARTICLE 9. TERM AND TERMINATION

9.1 The initial term of this Agreement shall commence on December 1, 2009 until November 30, 2012. Thereafter, this Agreement may be renewed and renegotiated for additional terms of four (4) years, if desired by the City.

9.2 Either party may terminate this Agreement for a material breach of the Agreement by the other party after giving written notice of breach and allowing the other party thirty (30) days to correct the breach. If the offending party fails to correct the breach then the Agreement may be terminated within thirty (30) days. Further, three breaches in any one calendar year shall be sufficient grounds for termination of this Agreement.

9.3 The City, at its option, has the right to terminate this Agreement with no less than ninety (90) days notice to the Operator. Upon notice of termination by City, Operator shall assist City in an orderly transition of the staff and a resumption of operation of the Project by the City.

## ARTICLE 10. LABOR DISPUTES; FORCE MAJEURE

10.1 In the event activities by City's employee groups or unions cause a disruption in Operator's ability to perform at the Project, City or Operator may seek appropriate injunctive court orders. Operator will continue to operate the Project on a best-efforts basis until such disruptions cease.

10.2 Neither party shall be liable for its failure to perform its obligations under this Agreement if performance is made impractical, impossible or abnormally costly due to any unforeseen occurrence beyond its reasonable control. The party invoking Force Majeure shall notify the other party within ten (10) working days after is occurrence.

10.3 If a collective bargaining unit is formed by the employees of the Operator, the Operator shall negotiate in good faith with the Union representatives for continuation of services under this Agreement. The City may review any proposed labor agreements prior to their acceptance by Operator.

Both parties indicate their approval of this Agreement by their signatures below:

**Authorized Signatures:**

City of Pascagoula, Mississippi
(City)

by _____
Robert H. Maxwell

Title: Mayor

Date 11-17-09

Utility Partners, L.L.C
(Operator)

by _____
Carl Padgett

Title: President

Date 11-17-09



8

# APPENDIX A

## DEFINITIONS

1. The "Project" means all equipment, vehicles, grounds and facilities and where appropriate, the management, operations and maintenance of such.

2. "Project staff" is defined as all employees of Operator except Project Managers and Contract Administrators that are permanently assigned to the City's project.

3. "Capital Expenditures" means any expenditure for the purchase of new equipment; or facility items or utility system repairs which significantly extend facility life and or expenditures that are planned, non-routine or budgeted by the City.

4. "Labor and benefits" cost is defined as salaries; group insurance, dental insurance, workmen's compensation, retirement and social security for employees.

5. "Administrative Cost" is defined as audit and accounting fees, insurance, interest expense, depreciation, state fees, recycling fees, curbside fee, landfill fees, ad valorem tax, purchase of natural gas and electric current for resale to the public, fund transfers and PCB testing.

6. "Direct Costs" is defined as supplies, cost for gas, oil, lubrication, advertising, non-specific engineering cost, postage, computers and software, training, telephone service, travel expenses of employees and uniform expense.

7. "Maintenance" means the cost of routine and/or repetitive activities required or recommended by the equipment or facility manufacturer or Operator as required to maximize the service life of equipment, vehicles and treatment facilities.

8. "Repairs" means the cost of those activities required for operational continuity, safety, and performance generally due to failure or to avert a failure of the equipment, vehicles or facilities or a component thereof.

APPENDIX B

INSURANCE COVERAGE

Operator shall maintain:

1. Statutory worker's compensation for all of Operator's employees at the project as required by the State of Mississippi.

2. Comprehensive general liability insurance in an amount not less than $5,000,000 combined single limits for bodily injury and/or property damage.

City shall be responsible for repairing or replacing all property owned by City and operated by Operator under this Agreement unless damage is the result of negligence of Operator's staff.

10

# APPPENDIX C

## PRICE PROPOSAL

Operator's price includes all costs associated with the following budget categories:

- Salaries
- Overtime (up to 8% of direct labor)
- Federal and State Unemployment
- Social Security
- Medical and Dental Insurance
- Worker's Compensation Insurance
- General Liability Insurance
- Uniforms and Personal Protective Equipment
- Computer Software
- Training Costs (State Certification Schools)
- GPS Monitoring System (up to 20 vehicles)
- Corporate Engineering and Operations Support

## APPENDIX D

### Benchmarks or Baseline Minimum Performance Standards

The following work is to be the minimum completed by the Operator on an annual basis during each year of service on behalf of the City.

| JOB FUNCTION | MINIMUM QUANTITY/YEAR* |
|---|---|
| **Water System** | |
| Water Line Installation | 2000 feet or more as needed |
| Water System Taps | As Needed |
| Conduct Water Plant Tours | As Requested |
| Repair/Replace Fire Hydrants | As Needed |
| Water System Work Orders | As Needed (maintaining an acceptable Monthly completion %) |
| Maintain MS Cross Connection Program | As Required |
| Coordinate Water Testing w/ MS Dept. of Health | As Required |
| **Sewer System** | |
| Sewer Line Installation | 2000 feet or more as needed |
| Sewer Taps | As Needed |
| Perform Point Repairs | As Needed |
| Install Sewer Cleanouts | As Needed |
| Sewer System Work Orders | As Needed (maintaining an acceptable Monthly completion %) |
| Coordinate with MS DEQ | As Required |
| **Streets and Drainage** | |
| Sidewalk Repairs | 250 feet/Year |
| Clean Ditches | 4000 feet/Year or more as needed Maintenance schedule to be provided to the City and a work record shall be submitted to The City in a monthly report |
| Sweep Streets | As per approved maintenance schedule |
| Flushing Storm Lines (Culverts, Catch Basins) | Schedule to be provided to City by Operator And records shall be submitted to the City in A monthly report. |
| Street Division Work Orders | As Needed (maintaining an acceptable Monthly completion %) |

12

**Gas System**
New Meter Sets              As Needed
Meter Replacement           150/Year or more as needed
New Services                As Needed
Repair Broken Services      40/Year or more as needed
New Gas Line Installed      As Needed
Gas Line Locates            As Needed

**Property Maintenance**
Work Orders                 As Needed (maintaining an acceptable
                              Monthly completion %)

13

R-133